## DIVISION BETWEEN RAILROAD COMPANIES OF COST OF CROSSINGS.

Circuit Court of Lucas County.

LIMA & TOLEDO TRACTION CO. v. TOLEDO RAILWAY & TERMINAL CO. ET AL.

Decided, July 7, 1907.

*Crossings—By Tracks of Steam, Street, Electric or Interurban Roads Outside of Corporate Limits—Construction of Section 3333-1 with Reference to Division of Cost—Jurisdiction of the Court—Statute Applies to all Crossings—Company First on the Ground Without Special Rights.*

1. Section 3333-1, providing for determination by the courts of the mode and manner whereby one railway shall cross the tracks of another outside the limits of a municipality and the apportionment of the cost of construction and maintenance thereof, applies to all crossings whether at or above or below grade, where the companies affected can not agree between themselves as to the mode or manner of dividing the expense of such crossings.

2. A railway which is established and in operation acquires, by reason of having come upon the ground first, no proprietary rights affecting a division of the cost of a crossing, which are superior to those of a later company seeking to cross the road first constructed; and where the crossing will be equally serviceable to both companies, the expense connected therewith should be equally divided between them, notwithstanding the crossing will be of no special benefit to the old company.

*Smith & Beckwith* and *Cable & Parmenter,* for plaintiff.
*C. G. Cunningham,* for defendants.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

Appeal from Lucas Common Pleas Court.

This is a proceeding brought by the plaintiff against the defendant under the act of May 10, 1902 (95 O. L., 530), entitled ''An act to provide for one steam railroad crossing another steam railroad''; and particularly Section 1 of that act, as amended on April 13, 1904 (97 O. L., 548; Section 3333-1, R. S.)

The plaintiff is a company incorporated for the construction and operation of an electric railroad. The defendant company owns and operates a steam railroad. The railroad of the plaintiff company is to extend from the city of Lima in Allen county, Ohio, to the city of Toledo, Ohio; and the tracks of the two companies will cross at a point about a mile southwest of the city limits. The defendant company operates a belt line which extends around the city of Toledo.

In its application the plaintiff, among other things, says that south of the point of crossing the railway of the plaintiff is located and being constructed along the southeast side of and parallel to the railroad of the Wabash Railroad Company, extending in a northeasterly and southwesterly direction, and, if continued in said direction, it will cross the railroad of the defendants near where the railroad of the defendants and that of the Wabash Railroad Company cross at grade. The plaintiff says that about seventeen hundred feet north of where the railway of the plaintiff crosses the railroad of the defendant, plaintiff's railway will also cross a highway and the tracks of the Toledo Urban & Interurban Railway Company, which said highway and said interurban railway are parallel and adjacent to one another.

Plaintiff says that its said line of railway can be so located parallel and adjacent to and along the southeast side of the right-of-way of the Wabash Railroad Company so that it will cross the tracks of the defendant company at grade and will cross over the tracks of the said the Toledo Urban & Interurban Railway Company by an overway passage where the said the Toledo Urban & Interurban Railway Company's tracks are constructed under the right-of-way of the Wabash Railway Company; which method of construction will require the plaintiff's tracks to cross the said highway at grade, unless said highway is lowered so as to pass under the tracks of the Wabash Railroad Company.

Plaintiff says that in constructing its said railroad upon the line above specified, if the defendants be required to lower the tracks of said defendant company, defendant will avoid the two grade crossing referred to, viz., the present grade crossing of the defendant company's tracks and the tracks of the Wabash

Railroad Company, and also the tracks of the plaintiff. Plaintiff says that by diverging from the parallel line with the right-of-way of the defendants at a point about three hundred feet from the right-of-way of the Wabash Railroad Company, it is possible to construct a crossing under the railway of the defendants, which said construction will require the expenditure of large sums of money, namely, about $12,000, and will require the plaintiff to construct at the crossing of the said highway above referred to, and about fifteen hundred feet north of the crossing of the railway of the defendants, an undergrade crossing, and in doing so plaintiff will be required to expend large sums of money in readjusting said highway so as not to change materially the grade of the same, and at a cost of about $3,500; and that course will also require plaintiff to cross under the railway of the said the Toledo Urban & Interurban Railway Company, the cost of which crossing plaintiff is informed and believes will be about $17,000.

Plaintiff says that the maximum grade of its said railway is two per cent. That it is unable to agree with the said defendants as to the manner in which the tracks of the railway of the defendants shall be crossed by the tracks of the plaintiff. It also sets forth that appropriate proceedings are pending in the Probate Court of Lucas County to acquire the right to cross the right-of-way of the defendant company. There are other averments, to which I need not give special attention. The prayer is, that the Court of Common Pleas of Lucas County, or a judge thereof, ascertain and determine by its decree the mode and manner in which the tracks of the plaintiff shall cross the tracks of the said the Toledo Railway & Terminal Company, and if the court order a separation of grades, or decree that the tracks of the plaintiff shall be constructed under the tracks of the railway of defendants, that the court equitably apportion the initial expense of such construction and crossing, and the expenses of maintenance thereof, between the parties to this action; and some other incidental relief is asked for.

The case was tried in the court of common pleas, and a crossing under the tracks of the defendant company having been or-

dered by that court, the plaintiff company was required to pay 86½ per cent. of the cost of the necessary construction, the other part of the cost to be paid by the defendant company. From that judgment the plaintiff appealed to this court. The case has been submitted to us, and we have heard the evidence and the arguments of counsel. The chief point of controversy in the case is as to the apportionment of the cost of the construction made necessary by the road of the plaintiff company passing under the road of the defendant company at the point mentioned. The plaintiff company was not satisfied with the judgment of the court of common pleas, feeling that too large a proportion of the cost had been apportioned to it, and therefore it appealed. On the other hand, the defendant company insists that, if it should pay any part of the cost, it should pay no greater part than has been apportioned to it. But it also contends (and this is a question which is presented at the very threshold of the case) that the matter is not one calling for the interposition of the court under this statute; that the situation is not such as to give to the plaintiff the right to invoke this statute, or the action of the court under it.

It appears from the evidence, and it stands practically undisputed, that, having in view the crossing beneath the turnpike mentioned, and beneath the tracks of the urban and interurban road—something contemplated by the plaintiff, and apparently practically decided upon—it will be more convenient and economical for the plaintiff to cross underneath the tracks of the defendant company than to cross the same at grade. If the plaintiff had not agreed or decided upon crossing beneath the turnpike mentioned and the tracks of the urban and interurban road, it is not apparent that it would be more convenient or economical for the plaintiff to pass beneath the tracks of the defendant company, but as the situation has developed, considering the topography of the country, and considering the purpose of the plaintiff to pass beneath the tracks of the urban and interurban and the turnpike in that vicinity, it is agreed on behalf of the plaintiff that even if the defendant company's tracks were not located as they are, or even if the plaintiff company should be required to

pay the whole cost of the construction made necessary by this crossing beneath the tracks of the defendant company, the plaintiff company would probably cross in that way, to-wit, beneath these tracks; that even if the whole cost were to fall upon the plaintiff, it would still be for it the most feasible and economical method of crossing. This is so chiefly because of a gully that it would enter and traverse in making the crossing of the tracks of defendant, and in approaching the point where it crosses the turnpike and the tracks of the urban and interurban.

There would be great expense, perhaps from $10,000 to $12,000, in the making of the fills across lower levels in order to reach the tracks of the defendant company at grade, and all this is avoided by crossing beneath the tracks through the gully. And it appears that, in the conversations and negotiations between the officers and representatives of these two companies respecting this proposed crossing, they have practically agreed that the crossing beneath the tracks would be most practicable and most desirable for both companies. They have practically agreed that the crossing should be made in that way; and perhaps it may be fairly said that the plaintiff has practically determined that the crossing shall be made in that way, unless some unforeseen object shall prevent, and that the defendant company makes no opposition to the crossing being made in that way, provided it is not required to pay any of the expense incident to the making of such crossing. Thus far the minds of the parties have met upon the matter. Thus far they are in agreement; and yet it can not be said that they have entered into an agreement having the force and effect of a contract, enforcible by one against the other, that the crossing shall be by this route through the gully and beneath the tracks of the defendant company. Had they entered into an agreement having the force and effect of a contract covering the subject-matter, then there would be no occasion for an appeal to this court.

While the statute evidently has in view, primarily, the interests and safety of the public in the construction of railroad crossings, yet the Legislature has seen fit to provide that where the companies agree upon the crossing, the court need not be

appealed to under this statute. It does not follow, however, that there are not other statutes that would have influence upon the matter, and that might prevent the agreement of the parties from being carried out, if it were found to be inimical to the public interest. It is insisted, however, on behalf of the defendants, that the primary purpose of this statute is to provide for the separation of grades, meaning by that the prevention of grade crossings, by requiring that the tracks of one road shall be above those of the other, and that in a case where a grade crossing is not at all practicable, or in a case where the parties have agreed that there shall not be a grade crossing, the matter is removed from the jurisdiction of the court; that in such cases there is nothing for the court to do in the premises; that there is then nothing left but to determine the form of construction to effect such crossing, and to determine the division of the cost between the parties. That for this purpose this statute can not be brought into requisition.

No doubt one of the chief purposes of the law is to prevent, where reasonably practicable, grade crossings; but we do not adopt the view of counsel that where this object is accomplished because of the impracticability of a grade crossing, or because of the agreement of the parties upon a different kind of crossing, there is nothing left for the court to do. As the law stood before the enactment of this statute in 1902, there seems to have been no way of determining through the action of a court, or otherwise than by the agreement of the parties, what the form of construction of a crossing should be, whether a grade crossing or one not at grade. If, for instance, under circumstances like those presented here, the plaintiff company should condemn the right to cross, and if its right to cross should be limited by the proceedings in condemnation to a crossing beneath the tracks of the defendant company, yet the form of construction, whether by an iron bridge, or a stone culvert, or a cement arch, or what not, as we understand it, could not be determined by the judgment of any court or in any manner except by agreement of the parties. Naturally it would fall out, and must have occurred in many cases, that the parties would be unable to agree upon the

form of construction of the crossing, and great harm or injustice might result to the company over and across whose tracks the right-of-way had been acquired by the condemnation proceedings through the construction of a crossing unsafe and inconvenient for it. We understand that this statute was meant to reach cases of that character, as well as to prevent grade crossings where practicable; that it was meant to provide for safe crossings, whether grade crossings or crossings not at grade, and whether such safety was to be provided for by derailing and other safety devices where the crossing was at grade, or by proper bridges or structures where the crossing was not at grade.

If the statute is not available to a party who agrees that a grade crossing may, should and shall be avoided, but is available to those only who stubbornly insist upon a grade crossing, regardless of the dictates of humanity, business policy and common sense, then it offers a premium to those who seek to defeat one of its principal objects, i. e., the prevention of grade crossings; or to those who in bad faith to the court pretend that they desire a grade crossing merely to obtain the benefit of the provisions as to the division of expense, and its benefits are withdrawn as a sort of penalty from those who seek to promote the policy of preventing grade crossings. A construction that would result in such absurdity and injustice should not be adopted unless it is plainly required by the words of the law.

The statute as it was first passed seems to have been imperfect, in that it did not provide for a division of the cost, as we think it should have done, and this imperfection in the statute appears to have been recognized by the Legislature later on when the amended Section 1 was passed. Section 1 as amended provides:

"That where it becomes necessary, outside the corporate limits of a city or village, for the track of a steam, street, electric or interurban railroad company to cross the track of another steam, street, electric or interurban railroad company, unless the manner of such crossing shall be agreed to between such companies, it shall be the duty of the court of common pleas of the county wherein such crossing is located, or a judge thereof in vacation,

on application of either party, to ascertain and define by its decree the mode of such crossing which will inflict the least practical injury upon the rights of the company owning or operating the road which is intended to be crossed."

I pause at that point. That, it will be observed, is not limited to cases where a grade crossing is practicable. Nothing thus far has been said about grade crossings, nor any other particular manner of crossing; and the matter which is to be presented to the court if not agreed upon is the *mode* of crossing, and that is to be fixed. That is to be fixed if the parties are unable to agree upon the *manner* of crossing, and we understand the words "mode" and "manner" to be used there synonymously; and we do not understand them to be confined to the idea of whether the crossing shall be at grade or above grade or beneath grade, but that the manner or mode of crossing includes as well the construction by which the crossing is made possible in any case; that the thing the parties must agree upon, in order to put the matter beyond the province of the court, if the court should be appealed to, is not only whether there shall be a grade crossing or an overhead crossing or an underway crossing, but the kind of construction in either case, and we suppose, as well, the division of the cost thereof, though as to that we need not say in this case because the question is not presented. It is possible that if all else were agreed upon excepting the division of the cost, the parties might not be able to bring that matter before the court for adjudication. As I say, we do not pass upon that question. We do hold, however, that in order to make an agreement that would be effective as an answer to the application to the court, it must at least cover the form of construction, the kind of construction, whether by bridge or trestle or culvert or arch, or what not, as well as the question whether it shall be located above or below or at grade, or at one point or another along the line of the road to be crossed. The statute proceeds:

"And, if in the judgment of such court or such judge thereof, it is reasonable and practicable to avoid a grade crossing, it shall by its process prevent a crossing at grade."

That is to say, that object, the prevention of grade crossings, is to be kept steadily in mind by the court in fixing what the crossing shall be, what the construction shall be, in dividing the cost, and all that; for while certain forms of construction may be necessary to provide for the safety of the traveling public where the crossing is not at grade, or certain forms of safety devices may be essential to provide for safety when the crossing is at grade, it is to be borne in mind that one of the most effective means to secure safety is to prevent the grade crossing where possible. There are certain conditions mentioned in the statute under which a grade crossing can not be prevented, conditions respecting the grade established by the company building the new line, and with respect to the high-water mark, etc. Then follows this provision, which is added to the original section: "The court shall, in its order equitably apportion the initial expense of such construction or crossing and the expense of maintenance thereof among the parties interested." And there is also a provision for appeal, under which the matter has been brought to this court.

Now the initial expense is to be equitably apportioned, and, as has been well said, that does not necessarily or under all circumstances mean equally divided. It is urged on behalf of the defendant that, since its railroad is in place and in operation, bridging this gully by trestle work and fills, it should not be required to pay any part of the expense of the construction required for this crossing, since the construction will be of no advantage to it. It appearing that a water-course traverses this gully and passes under the tracks of the defendant company, and that some time in the course of a few years it may be necessary to replace the piling, and that it will probably be expedient to put a culvert over this water-way, it is conceded by the defendant company that it may be just that it should bear a share equal to the expense which would fall upon the defendant company if the plaintiff company should not occupy that place, i. e., that it might be equitable to apportion to the defendant company as much as that culvert would cost. It appears that it would need

to be five or six feet high and seven or eight feet wide, to accomodate the stream, and that it would cost from $1,000 to $1,200.

On the other hand it is urged that in the eye of the law the companies have an equal right at this place—an equal right to cross at this point; that by coming upon the ground first the defendant company has not acquired any such proprietary right as enables it to levy tribute upon the plaintiff company, or to say to the plaintiff company: ''This construction is made necessary by your coming here, and therefore you should pay the whole cost of it.''

It is pointed out that if the plaintiff company had come upon the ground first and occupied this gully, no overhead construction would have been required for its purposes; that the defendant then coming along with its road to span the gully might have been met with the proposition that it came last, and the expense of the bridge over the gully and all construction necessary to protect the plaintiff company and its tracks should fall upon the defendant company. It is said by counsel for the plaintiff company that this would not be fair, would not be equitable, but that the matter should be considered and adjusted as if the parties had come to this point to cross at the same instant, with equal rights, and that then and there the necessity had arisen for a construction which would enable one to cross over the other. In that event, it seems to us quite apparent that the cost should be equally divided between them; and if that is the proper view of the matter, it follows that the judgment of the court in this case should divide the cost equally.

So the problem seems to our minds to resolve itself into a question as to whether the defendant company has acquired any superior proprietary rights in the premises by reason of its having reached the place of crossing first with its tracks. If so, the same result would probably follow whether it had reached that point a score of years or an hour before the plaintiff company had reached it, or long enough before to have constructed a trestle sufficient to carry its trains over the gully.

If we understand the views of the Supreme Court of Ohio, as

expressed in the case of *Lake Shore & M. S. Ry.* v. *Railway*, 30
Ohio St., 604, they require us to resolve this question in favor of
the contention that no superior right is acquired by the company
that first comes upon the ground. These franchises are granted
to these public service corporations because of the supposed ad-
vantages to the public. Their right and authority to appropriate
right-of-way are based upon the same ideas; and we believe it is
not contemplated by law, especially not by this statute, that one
such corporation can place itself across the track of another, or
the contemplated track or course of another, in such a way as to
make it more burdensome or difficult for the company coming up-
on the ground later to traverse such track, except as changed
physical conditions may make it more expensive and difficult. And
that when it comes to the changing of such physical conditions in
order that both may pass a given point, and in order that the
interests of the public may be subserved, unless there is some
special reason why there should be a different division of the ex-
pense, we think it should fall upon the companies equally.

We may imagine cases where there would be such special con-
ditions, as if, for instance, where there had been expensive work
constructed by the defendant company at the point of crossing
by the defendant company, so that a line laid out by the plaint-
iff company would require its destruction; or if the structure,
when constructed, would afford some special advantages or facili-
ties to one and not to the other. But here all that either company
acquires by this construction is a crossing at that point. One
company is enabled to go beneath the lines of the other; and
that is all they have in the matter, all the good they get out of it,
and each appears to be equally served by the construction. We
have endeavored to apply the principles heretofore recognized by
us as applicable to such cases, *i. e.*, in the unreported case of
*Akron & C. J. Ry.* v. *Railway*, decided by this court in Huron
county.

Now, as to the form of construction, we conclude to order the
same as was ordered by the court of common pleas. Perhaps that
is not the very best that could be constructed, perhaps not as
good as that proposed by the plaintiff company; but it seems

to be safe and serviceable, and we think will answer all the purposes of the parties and the interests of the public.

The cost of the construction and maintenance of the abutments and the girders should be equally divided. Of course the track that the defendant company lays upon the girders is a matter the expense of which will fall upon the defendant company; and in the same way, the track of the plaintiff company will be a matter for it to pay for itself. But everything pertaining to the abutments and the girders, the work and the materials and all, and this we understand will span the stream so as to allow the water to pass—we understand that is provided for —shall be divided equally between the parties. And the costs of this proceeding will likewise be divided between the parties equally.